UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
SOUTHWARD INVESTMENTS, LLC,

                          Plaintiff,                06-CV-6540T

           v.                                  **DECISION**
                                                **and ORDER**
V-GPO, INC.,

                          Defendant.
_____

      Plaintiff Southward Investments, LLC, ("Southward"), brings this action against defendant V-GPO, Inc., ("V-GPO") claiming that the defendant breached a contract between the parties, and unlawfully converted plaintiff's property.  Southward seeks specific performance of the terms of the contract, or, in the alternative, damages for the alleged breach of contract and conversion of property.

      Defendant V-GPO moves for summary judgment in its favor on grounds that this court lacks subject matter jurisdiction over the dispute because the amount in controversy is not in excess of $75,000.00.  Defendant further contends that plaintiff's cause of action for conversion is untimely, and that its breach of contract claim is defective as a matter of law because Southward failed to perform conditions precedent set forth in the contract.

      For the reasons set forth below, I grant defendant's motion for summary judgment.

BACKGROUND

Plaintiff Southward Investments, LLC, is an investment company located in Rochester, New York. Southward is engaged in the business of selling shell corporations. Morris Diamond ("Diamond") is the President of Southward. Diamond was personally acquainted with Casimer Jaszewski ("Jaszewski"), the owner of controlling interest in a company known as Epicure Investments ("Epicure"). Epicure was a publicly-traded shell corporation.

In 2001, Jaszewski sought the assistance of Southward in selling Epicure. Diamond contacted Douglas Murdock ("Murdock") of Belmont Management Services to inquire whether Murdock knew of any potential buyers for a publicly-traded shell corporation. Murdock indicated that a company affiliated with Belmont, defendant V-GPO, (a privately held corporation) was interested in purchasing Epicure as part of a "reverse merger" transaction whereby V-GPO would merge with Epicure, and in doing so, would become a publicly traded company. A reverse merger transaction is relatively simple way for a privately-held company to become a publicly-traded company in that it avoids several of the administrative, procedural, and regulatory restrictions and requirements imposed on private companies which attempt to become publicly-traded companies. In a reverse merger transaction, because a publicly-traded company already exists, the privately-held company need only merge with the public company to become a public company itself. Typically, once a reverse merger is completed, the name of the merged company is changed to that of the former private company, and the principles

of the private company take control of the newly formed public company.

In 2001, Epicure and V-GPO agreed to enter into a reverse merger agreement. Pursuant to the parties' agreements, Jaszewski was to be paid $400,000 for the company. Southward contends that its compensation for arranging the deal was to be paid in 2,000,000 freely-trading, pre-merger stock from Epicure. Southward contends that because Jaszewski was under financial duress at the time, it agreed to take its commission in the form of stock, and to pay the transactional costs and attorneys fees related to the merger. Thereafter, Southward contends that it agreed to trade its 2,000,000 shares of freely-trading, pre-merger Epicure Stock for 3,000,000 restricted post-merger shares of the newly formed company that emerged from the merger.

Defendant disputes the plaintiff's claims, and contends that Southward never had an agreement with either Jaszewski, Belmont, or V-GPO to receive 2,000,000 shares of pre-merger Epicure stock, nor was there ever an agreement between any of the parties to exchange 2,000,000 shares of pre-merger Epicure Stock for 3,000,000 post merger shares. Rather, defendant contends that Southward and V-GPO entered into a Stock Purchase Agreement whereby Southward agreed to purchase 3,000,000 shares of post-merger V-GPO par value common stock (valued at $.0001 per share) for $2,500,000. Specifically, the Stock Purchase Agreement provided that:

> the Purchaser [Southward] hereby agrees to purchase . . . [3,000,000 shares of stock] for an aggregate of $2,500,000 U.S. ("Price"), and Purchaser hereby agrees to pay simultaneously

>       with payment of the Price, all fees, costs,
>       and expenses associated with effecting the
>       transactions related to the Merger Agreement
>       dated the date of this Agreement between the
>       Company [V-GPO] and Epicure Investments, Inc.,
>       . . . including specifically, but not
>       exclusively, the sale of the [3,000,000 shares
>       of stock] to Purchaser. Company [V-GPO]
>       acknowledges and agrees that the Price for the
>       [3,000,000 shares of stock] shall be provided
>       by the resale of certain shares of Epicure
>       Investments, Inc. . . .under the Stock Sale
>       and Escrow Agreement of even date herewith . .
>       . ."[1]

V-GPO contends that because Southward never paid for the stock pursuant to the Stock Purchase Agreement, it is not entitled to the $3,000,000 shares of stock. Southward contends that the money that was to be used for the purchase of the stock was to be derived from the sale of Epicure that was sold to Belmont pursuant to the Stock Sale and Escrow Agreement.

## DISCUSSION

I.   <u>Defendant's Motion for Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." When considering a

---

[1] The Stock Sale and Escrow Agreement referred to in the Stock Purchase Agreement was actually entered into on December 6, 2001. That agreement was made between Epicure Investments and Belmont Management Services, a company operated by V-GPO.

motion for summary judgment, all inferences and ambiguities must be resolved in favor of the party against whom summary judgment is sought. R.B. Ventures, Ltd. v. Shane, 112 F.3d 54 (2nd Cir. 1997). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. Annis v. County of Westchester, 136 F.3d 239, 247 (2nd Cir. 1998).

    II.  Breach of Contract

"To make out a viable claim for breach of contract a 'complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2nd Cir. 2004)(quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir.1996).

In the instant case, there is no dispute that Southward and V-GPO were parties to a Stock Purchase Agreement. It is further undisputed that V-GPO did not deliver 3,000,000 shares of $.0001 par value Common Stock to Southward following completion of the merger between V-GPO and Epicure. Assuming that the plaintiff could prove damages from not receiving the 3,000,000 shares of stock, the remaining questions are whether Southward performed under the contract, and whether V-GPO breached the agreement by not delivering the 3,000,000 shares.

The Stock Purchase Agreement clearly states that Southward "agrees to purchase the shares for an aggregate of $2,500,000 ..." It is uncontested, however, that Southward did not pay any amount for the shares. Accordingly, because Southward failed to fulfill a condition precedent to receiving the shares, (paying the $2,500,000 purchase price), Southward cannot establish a claim for a breach of contract.

Southward, however, claims that the parties never intended that it would have to pay for the shares, and that it was understood that the 3,000,000 post-merger shares were to be received by Southward in exchange for the 2,000,000 pre-merger shares that it claims it was entitled to as compensation for arranging the merger, and paying for the associated transactional costs of the merger. In support of this argument, Southward points to that portion of the Stock Purchase Agreement which states that V-GPO "acknowledges and agrees that [$2.5 million] price for the shares shall be provided by the resale of certain shares of Epicure Investments, Inc. . . . under the Stock Sale and Escrow Agreement of even date herewith." December 10, 2001 Stock Purchase Agreement at ¶ 1.

Southward's argument, however, is unavailing for several reasons. First, there is no evidence in the record that Southward had any agreement with any party under which it would receive 2,000,000 shares of pre-merger Epicure Stock. Although Plaintiff's Complaint alleges that "[p]rior to December, 2001, plaintiff entered into an agreement with Jaszewski pursuant to which, among

other things Jaszewski agreed, in consideration of plaintiff arranging for a reverse merger between Epicure and an operating company, that Jaszewski would contribute the use and/or benefit of 2,000,000 of his shares of Epicure . . . to facilitate the merger transaction"  (Complaint at ¶ 6), Morris Diamond, Southward's President, admitted under oath that in fact Jaszewski and Southward had <u>never</u> entered into any agreement pursuant to which Southward would receive <u>any</u> pre-merger Epicure stock.  Deposition Testimony of Morris Diamond at p. 133, 140.  Accordingly, the allegation of that an agreement existed between Southward and Jaszewski as alleged in the Complaint is false, and cannot serve as support for plaintiff's claim that he was to receive 2,000,000 shares of stock in compensation for his role in the merger, or that he agreed to exchange his 2,000,000 shares of pre-merger stock for 3,000,000 shares of post merger stock.  Having not received 2,000,000 shares of stock initially, Southward lacked the ability to exchange that stock for post-merger stock.  Similarly, because Southward did not have 2,000,000 shares of stock to be sold, absent some agreement to the contrary, it could not benefit from the sale of 2,000,000 shares of stock to be applied towards the purchase price of the post-merger stock.

Southward contends, however, that it was to benefit from the resale of stock sold by Jaszewski to Belmont pursuant to the Stock Sale and Escrow Agreement ("SSEA") entered into between Belmont and Jaszewski.  The SSEA, however, was the agreement which effectively "sold" Epicure to V-GPO, and provided, generally, that in

consideration of Jaszewski's delivery of 2,010,000 shares of Epicure Stock to Belmont, Jaszewski would receive $400,000. Nowhere in that agreement is there any reference to Southward being entitled to receive any stock, or benefit from the sale of Jaszewski's stock. Accordingly, I find Southward's claim of entitlement to the benefit of proceeds from the resale of Jaszewski's stock to Belmont to be wholly unsuported by the record.

The only evidence in the record suggesting that Southward was entitled to either 2,000,000 shares of pre-merger stock or 3,000,000 of post-merger stock is Diamond's testimony that he had oral understandings with Murdock that Southward would receive 3,000,000 shares of stock. Diamond testified that he had "an understanding" with Murdock that Southward would receive stock as its compensation for being "the go-between" in the merger deal. Deposition Testimony of Morris Diamond at pp. 135-136. Diamond testified that his stock compensation deal was "done orally." Id. at 140. However, the Stock Purchase Agreement entered into by Diamond on behalf of Southward states clearly and unequivocally that the written agreement constituted "the entire agreement between the parties pertaining to the subject matter as set forth [therein] and supersede[d] any prior understandings or agreements, oral or written. Accordingly, Southward's claims of oral promises collateral to the contract may not be considered by the court. Because V-GPO has demonstrated that Southward failed to perform a condition precedent under the Stock Purchase Agreement, I find that plaintiff has failed to state a claim for breach of contract.

III. <u>Conversion and Specific Performance</u>

For the reasons stated above, I grant defendant's motion for summary judgment with respect to plaintiff's claims for specific performance and conversion. Plaintiff has failed to establish that it is entitled to performance of the Stock Purchase Agreement, and has failed to establish that the defendant has converted its property.

CONCLUSION

For the reasons set forth above, I grant defendant's motion for summary judgment, and dismiss plaintiff's complaint with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

s/Michael A. Telesca<br>
MICHAEL A. TELESCA<br>
United States District Judge

Dated:   Rochester, New York
         September 26, 2007